**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-01739-WJM-BNB

PROSPECT RESOURCES, INC., a Colorado corporation,

    Plaintiff,

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY, a Minnesota corporation, and
UNITED STATES FIDELITY AND GUARANTY COMPANY, a Connecticut corporation,

    Defendants.

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Prospect Resources, Inc. ("Prospect" or "Plaintiff") brings claims against Defendants St. Paul Fire & Marine Insurance Company ("St. Paul") and United States Fidelity and Guaranty Company ("USF&G")[1] for breach of contract, common-law breach of the duty of good faith and fair dealing, and failure to pay benefits owed on an insurance contract in violation of Colo. Rev. Stat. § 10-3-1115 & 1116. (ECF No. 1-1.) These claims all arise out of Defendants' denial of coverage and failure to provide a defense for Prospect in an underlying state court lawsuit.

Before the Court are the following motions: (1) Defendants' Motion to Dismiss Plaintiff's statutory bad faith claim (ECF No. 7); (2) Defendants' Motion for Summary Judgment (ECF No. 22); and (3) Plaintiff's Cross-Motion for Partial Summary Judgment (ECF No. 42). For the reasons set forth below, Defendants' Motion for Summary Judgment is granted, which moots the need to consider the remaining motions.

---

[1] The Court will refer to St. Paul and USF&G collectively as Defendants.

## I. LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Quaker State Mini-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995); *Houston v. Nat'l General Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. FACTUAL BACKGROUND

Prospect[2] is a geological consulting firm that was involved with managing the development of gas wells in Trinidad, Colorado in the late 1970s and 1980s. (ECF No. 1-1 ¶¶ 2, 14-18.) Prospect was insured under a general commercial liability policy

---

[2] Prospect was formerly known as Gustavson Associates and is so named in the underlying action. (ECF No. 1-1 ¶ 2; ECF No. 22-1; ECF No. 22-2.)

issued by St. Paul from 1979 through 1988. (ECF No. 1-1 ¶ 9.) USF&G issued Prospect a commercial liability policy from 1988 through 1999. (*Id.* ¶ 10.) The Court will refer collectively to the policies issued by Defendants over this twenty-year span as the "Policies."[3]

In the late 1970s, three wells were drilled on mineral property controlled by the City of Trinidad to test for the presence of coalbed methane gas. (ECF No. 22-1 ¶ 11.)[4] In 1984, the wells were determined to not be commercially viable and, under the field management of Prospect, were cemented, plugged, and abandoned. (*Id.* ¶ 12.)

In November 2004, Stephen and Audrey Bouvier (the "Bouviers") purchased a parcel of land under which one of these three wells, Trinidad MGP-1, was plugged and abandoned. (*Id.* ¶ 1; ECF No. 1-1 ¶ 19.) In August 2006, the Bouviers contracted with Cornerstone Contractors, Inc. to build a home on their property. (ECF No. 22-1 ¶ 15.) In April 2007, the Bouviers' home was approximately 80% to 85% complete when it exploded due to an accumulation of natural gas that leaked out of the Trinidad MGP-1 well. (*Id.* ¶ 16.) The explosion and subsequent fire injured three of Cornerstone's employees. (*Id.*) It also destroyed the Bouviers' home, supplies and materials that

---

[3] Because the Policies span twenty years, there are some minor differences in the way certain terms are defined. However, the parties agree that, for the most part, the meaning of the pertinent terms remained unchanged. Thus, the Court will refer to how each phrase or term is defined in one policy with the understanding that this definition continued to be substantially similar during the entire twenty-year span at issue here. To the extent that any changes were made that are significant to the Court's analysis, such changes will be noted.

[4] Many of the facts set forth herein are taken from the complaint and amended complaint filed in the underlying action. For purposes of the instant motions, the Court accepts as true all allegations in these pleadings. *See Employers' Fire Ins. Co. v. W. Guar. Fund Serv.*, 924 P.2d 1107, 1110 (Colo. App. 1996) (court must evaluate duty to defend based solely on the pleadings in the underlying action and must accept all factual contentions therein as true).

were intended for construction, and tools and equipment owned by Cornerstone. (*Id.*)

On September 24, 2008, the Bouviers, Cornerstone, and the three injured Cornerstone employees (collectively "Underlying Plaintiffs") filed suit in Las Animas County District Court for the damages and injuries suffered as a result of the explosion (the "Underlying Litigation"). (ECF No. 22-1.) Prospect was one of three named defendants in that action. (*Id.*) The complaint in the Underlying Litigation charged Prospect with negligence in the plugging of the Trinidad MGP-1 well as well as trespass for the methane gas that was allowed to enter the Bouviers' property. (*Id.*)

On October 18, 2008, Prospect notified St. Paul and USF&G of the Underlying Litigation and sought a defense and coverage of the claim under the Policies. (ECF No. 1-1 ¶ 28.) On August 25, 2009, Defendants denied coverage for the claims asserted in the Underlying Litigation. (*Id.* ¶ 29.) In October 2009, the Underlying Plaintiffs amended their complaint in the Underlying Litigation. (*Id.* ¶ 30.) Prospect again requested coverage and defense from St. Paul and USF&G and its request was again denied. (*Id.*) Because St. Paul and USF&G denied coverage under the Policies, Prospect paid substantial sums to defend the Underlying Litigation and, ultimately, to settle the claims made therein. (*Id.* ¶ 32.)

On June 24, 2010, Prospect filed the instant action in Boulder County District Court bringing three claims: (1) common law breach of contract for the failure to investigate, adjust, defend, settle, and indemnify Prospect in the Underlying Litigation; (2) common law breach of the duty of good faith and fair dealing in insurance contracts based on Defendants' allegedly "deliberate and unreasonable" failure to defend and

indemnify Prospect in the Underlying Litigation; and (3) violation of Colo. Rev. Stat. §§ 10-3-1115 and 1116 by delaying and denying the payment of benefits owed under the insurance contract. (ECF No. 1-1.) On July 22, 2010, this action was removed to this Court based on diversity of the parties. (ECF No. 1.)

### III.  ANALYSIS

Defendants move for summary judgment on all of Plaintiff's claims. The Court will address each in turn below.

**A.     Breach of Contract**

Prospect alleges that Defendants breached their insurance contracts, *i.e.*, the Policies, by failing to defend against the Underlying Litigation and failing to indemnify Prospect for the damages it paid to the Underlying Plaintiffs. Under Colorado law,[5] an insurance company owes its insured both a duty to defend and a duty to indemnify. *See Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1086, n. 5 (Colo. 1991). The duty to indemnify relates to the insurer's duty to satisfy a judgment entered against the insured and is narrower than the duty to defend, which "concerns an insurance company's duty to affirmatively defend its insured against pending claims." *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003) (internal quotations and citations omitted). Because these duties are separate and distinct, *see id.*, the Court will examine the duty to defend separately from the duty to indemnify.

---

[5] Because this case is in federal court based on diversity jurisdiction, the Court applies the law of the forum state, in this case, Colorado. *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1216-17 (10th Cir. 2011).

1.   Duty to Defend

It is undisputed that Defendants refused to provide a defense for Plaintiff in the Underlying Litigation.  Plaintiff alleges that this refusal breached the Policies.  "An insurer seeking to avoid its duty to defend an insured bears a heavy burden."  *Hecla Mining*, 811 P.2d at 1089.  "[T]he insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot."  *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 614 (Colo. 1999) (internal citations and quotations omitted).  "An insurer has a duty to defend unless it can show that: (1) the allegations in the complaint against the insured describe only situations which are within the policy exclusions; and (2) there is no factual or legal basis on which the insurer might be held liable to indemnify the insured."  *TerraMatrix, Inc. v. U.S. Fire Ins. Co.*, 939 P.2d 483, 486 (Colo. App. 1997).  The obligation to defend is not determined by the insured's actual liability to the claimant; instead, the duty to defend arises when the allegations in the complaint, if sustained, would impose a liability covered by the policy.  *See Hecla Mining*, 811 P.2d at 1089.

A court's determination of whether an insurer has a duty to defend is confined to its examination of the four corners of the underlying complaint.  *See Weitz Co., LLC v. Mid–Century Ins. Co.*, 181 P.3d 309, 311 (Colo. App. 2007) (internal quotations and citations omitted).  "[T]he duty to defend must be determined based solely on a comparison of the allegations of the complaint made against the insured with the insuring provisions of the policy."  *Employers' Fire Ins. Co. v. W. Guar. Fund Serv.*, 924 P.2d 1107, 1110 (Colo. App. 1996).  The interpretation of the policy provisions is

"based upon the principles of contract interpretation." *Hecla Mining*, 811 P.2d at 1090 (internal citations omitted). Because determination of a duty to defend is based solely on the allegations in the underlying pleading and the terms of the insurance contract, whether a duty to defend exists is a question of law. *See Bumpers v. Guarantee Trust Life Insurance Co.*, 826 P.2d 358, 360 (Colo. App. 1991); *see also Apartment Inv. and Management Co. (AIMCO) v. Nutmeg Ins. Co.*, 593 F.3d 1188, 1193 (10th Cir. 2010).

The Policies at issue here provide that Defendants will "pay amounts any protected person is legally required to pay as damages for covered bodily injury, property damage or fire damage that: [1] happens while this agreement is in effect; and [2] is caused by an event." (ECF No. 42-2 at 30.) Thus, to invoke Defendants' duty to defend, the complaint in the underlying action had to allege the following: (1) bodily injury, property damage or fire damage; (2) that occurred while the policy was in effect; and (3) was caused by an "event".

It is undisputed that any bodily injury and fire damages sustained by the Underlying Plaintiffs was suffered in 2007—approximately eight years after the Policies expired. Thus, the only type of injury possibly covered under the Policies was property damage. The Policies defined "property damage" as "physical damage to tangible property of others, including all resulting loss of use of that property; or loss of use of tangible property of others that isn't physically damaged." (ECF No. 42-2 at 31.) An "event" is defined as "an accident, including conditions or repeated exposure to substantially the same general harmful conditions." (*Id*.)

The relevant portion of the amended complaint[6] in the Underlying Litigation (hereafter "Amended Complaint") is as follows:

> 13. In 1984, a decision was made by Defendant APGA, after recommendation by Defendant [Prospect], that the Trinidad MGP-1, Trinidad MGP-2 and Trinidad MGP-3 wells were not commercially viable and that they should be plugged and abandoned. These three wells were thereafter plugged, abandoned and buried at the instruction of Defendant APGA and under the direction and supervision of Defendants [Prospect] and Trinidad, acting as operators on behalf of Defendant APGA. Defendant APGA, through Defendants [Prospect] and Trinidad, retained the services of Defendant Haliburton and directed and supervised, and were ultimately responsible for the plugging and abandoning of the Trinidad MGP-1, Trinidad MGP-2 and Trinidad MGP-3 wells.
>
> . . .
>
> 17. On or about April 17, 2007, the retirement home, which was under construction and approximately 80 to 85% complete, exploded, due to an accumulation of natural gas that leaked out of the Trinidad MGP-1 well and was ignited. The explosion injured Plaintiffs Velasquez, Kinder and Coberly, destroyed the Bouvier home and supplies and materials which had not yet been incorporated into the home under construction and damaged and destroyed tools and equipment owned by Plaintiff Cornerstone.
>
> 18. As a result of the explosion, Plaintiffs have incurred the following damages and losses:
>
>   . . .
>
>   c. Bouvier Plaintiffs have incurred damages, including, but not limited to, a loss in value of

---

[6] The Court has compared the original and amended complaints filed in the Underlying Litigation and finds that the factual allegations relevant to this case are identical. Thus, the Court will refer solely to the allegations set forth in the amended complaint.

>>the Bouvier property as well as expenses incurred due to the explosion and in connection with the development of the Bouvier Property which are no longer of value.
>
>> . . .
>
>Seventh Claim for Relief
>[Trespass to Land—All Defendants]
>
>. . .
>
>>43. The Bouvier Plaintiffs are owners of real and personal property destroyed or damaged by the explosion.
>>
>>44. The Defendants caused the explosion by the accumulation of natural gas from property not belonging to the Bouvier Plaintiffs.
>>
>>45. The Defendants caused natural gas to enter upon the real property of the Bouvier Plaintiffs without their permission, materially interfering with the Bouvier Plaintiffs' use of their real property and caused damages and losses to the Plaintiffs.

(ECF No. 22-2.)

Plaintiff argues that Defendants had a duty to defend because the Amended Complaint alleged an event that occurred while the Policies were in effect. The Court disagrees. In *Samuelson v. Chutich*, 529 P.2d 631 (Colo. 1974), a homeowner had a gas line installed in 1960. A reaction between the soil and the material used for the gas line resulted in the deterioration of the gas line over the next six years. In 1966, the homeowners were severely injured when gas that had leaked into their home exploded. The homeowners sued the installer of the gas line, who in turn sought coverage under its insurance policy that was in effect when the gas line was installed in 1960.

The insurance policy at issue covered only "accidents which occur during the

policy period". The homeowners argued that the "accident" was a continuing process which began when the pipe was allegedly negligently installed in 1960, and culminated in an explosion in 1966, and therefore coverage was warranted under the 1960 policy. The court of appeals disagreed and held that the "'accident' causing injury in this case occurred at the time of the explosion, not when the allegedly wrongful act was committed." *Id*. The Colorado Supreme Court affirmed and held that "[t]o stretch the scope of the 'accident' backward in time to reach the date of the earliest beginning of any prior event which might be regarded as having a causal relation to the unlookedfor mishap would introduce ambiguity where none now exists." *Samuelson*, 529 P.2d at 635.

Thus, the salient question is not when the negligent act that ultimately results in the injury occurs; the Court must focus on when the actual injury happened. Under this reasoning, the fact that the MGP-1 well was negligently capped while the Policies were in effect does not mean that there was a potential claim against the Policies. The Court must determine whether any injury—in this case property damage—was alleged to have occurred while the Policies were in effect.

The most relevant Colorado case on the issue of when property damage occurs is *Leprino v. Nationwide Prop. and Cas. Ins. Co.*, 89 P.3d 487 (Colo. App. 2004). In *Leprino*, a developer was sued by homeowners who had purchased homes from the developer. The homeowners alleged that, between 1991 and 1993, the developer negligently prepared the lots on which the homes were built in disregard of the soils reports and that such negligence resulted in a landslide in 1998. The relevant paragraph from the homeowners' complaint follows:

> In or about March, 1998, the culmination of a continuous and progressive geologic hazard process manifested itself in the form of slope failure, landslide and/or landcreep on Green Mountain, damaging and/or otherwise significantly impairing all of the Plaintiffs' homes and underlying land. This process has resulted in actual property damage, a loss of the use of enjoyment of all or part of the Plaintiffs' homes and land, and in an interruption of and eviction from some or all of the Plaintiffs' right of private occupancy, among other damages, losses and injuries.

*Id*. at 491. The developer tendered defense of this lawsuit to the companies that insured it between 1991 and 1998. Nationwide—the developers' insurer between 1991 and 1993—denied coverage and refused to defend; the developer sued for breach of contract and bad faith. *Id*. at 489.

Interpreting policy terms that were virtually identical to those at issue in the above-captioned action, the Colorado Court of Appeals held that the Nationwide owed no duty to defend. The developer argued that the complaint's allegation of "continuous and progressive geologic hazard" brought a claim for property damage that occurred beginning in 1991. The court disagreed noting that the complaint "itself did not characterize such 'geologic hazard process' as property damage, but alleged that it 'has resulted in actual property damage.'" *Id*. The court was also compelled by the fact that the complaint did not specifically allege when the geologic hazard process began. *Id*. As a result, the court held that "the reference in the underlying complaint to a 'continuous and progressive geologic hazard process'" could not be "construed to allege property damage within the defendants' policy periods." *Id*. at 491. Thus, there was no duty to defend. *Id*.

In this case, Plaintiff argues that the Amended Complaint brings a possible claim

under the Policies because it alleges that the that the explosion and the trespass were caused by an "an accumulation of natural gas that leaked out of the well". (ECF No. 42 at 12-14.) Plaintiff contends that the accumulation of natural gas is an "event" for purposes of the Policies because "accumulation" necessarily implies that there was repeated exposure to the harmful condition. (*Id*. at 14.) Plaintiff also argues that the "it may be reasonably inferred based on the allegations in the Underlying Complaint that the accumulation of natural gas caused property damages to the Bouviers' predecessor-in-interest while the Policies were in effect." (*Id*. at 15.)

For many of the reasons set forth in *Leprino*, the Court disagrees with Plaintiff's arguments. Like the underlying complaint in *Leprino*, the Amended Complaint does not characterize the accumulation of natural gas, in and of itself, as property damage. Rather, the accumulation of natural gas is referred to solely as the cause of the explosion and the cause of the trespass. (ECF No. 22-2 ¶¶ 17 & 45.) The Amended Complaint also fails to allege when the accumulation of natural gas began. Thus, like the Colorado Court of Appeals in *Leprino*, the Court finds that the allegation that certain acts were caused by "an accumulation of natural gas" cannot be construed to allege property damage that occurred while the Policies were in effect. *See Leprino*, 89 P.3d at 491.

In sum, at the time the Policies were in effect, it is undisputed that there was only raw land on the situs of the Bouvier home. Thus, the only property damage that could possibly have occurred while the Policies were in effect was damage to that raw land. Having reviewed the allegations in the Amended Complaint, the Court finds there is no

allegation of property damage to that raw land between 1979 and 1999. Paragraph 17 of the Amended Complaint sets forth the Underlying Plaintiffs' injuries and focuses solely on the explosion in 2007 – eight years after termination of the insurance policy most recently in effect – and its effect on the home then under construction, supplies and materials, and the individuals constructing the home. (ECF No. 22-2 ¶ 17.) There is no mention, in this paragraph of the Amended Complaint or any other, of separate property damage to the raw land itself. Because the improved real property, supplies and materials did not exist in or before 1999, and because the individuals who sustained the personal injuries at issue in the Underlying Litigation did not work on the Bouvier property in or before 1999, it was an existential impossibility for the Underlying Plaintiff's injuries to have occurred during the time period the Policies were in effect. Thus, the Amended Complaint fails to state a factual or legal basis that could possibly lead to a claim under the Policies. Therefore, Defendants had no duty to defend Plaintiff in the Underlying Litigation. *See TerraMatrix, Inc.*, 939 P.2d at 486.

    2.    <u>Duty to Indemnify</u>

The Colorado Supreme Court has held that "[w]here there is no duty to defend, it follows that there can be no duty to indemnify." *Constitution Assoc. v. New Hampshire Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996). Because the Court has held that Defendants owed Plaintiff no duty to defend against the Underlying Litigation, it follows that there was no duty to indemnify. *Id*.

Because Plaintiff has failed to show a trial-worthy issue as to whether Defendants breached the insurance contracts either by failing to defend or failing to indemnify, summary judgment is appropriate Plaintiff's breach of contract claim. Thus,

Defendants' Motion for Summary Judgment is granted as to this claim.

B.  **Common Law and Statutory Bad Faith Claims**

Plaintiff alleges that Defendants' refusal to defend or indemnify it constituted a breach of the common law duty of good faith and fair dealing that is read into every insurance contract. (ECF No. 1-1 ¶¶ 39-45.) Plaintiff also alleges that the refusal to indemnify breached Colo. Rev. Stat. §§ 10-3-1115 and 1116 by unreasonably delaying or denying payment of benefits owed on an insurance contract.[7] (*Id.* ¶¶ 46-50.) Under Colorado law, the central issue in both common law and statutory bad faith claims is whether "'a reasonable insurer under the circumstances [would] have denied or delayed payment of the claim under the facts and circumstances.'" *TPLC, Inc. v. United Nat. Ins. Co.*, 44 F.3d 1484, 1496 (10th Cir. 1995) (*quoting Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985)). Because the Court has held that Defendants had no duty to defend or indemnify, no reasonable juror could find that it was unreasonable for the Defendants to deny payment of the claim in this case. *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 815 (10th Cir. 2009) ("Because [insurer] had no legally cognizable duty to defend or indemnify a claim, plaintiffs' bad faith claim also cannot survive."). Accordingly, Defendants' Motion for Summary Judgment is granted with respect to Plaintiff's common law and statutory bad faith claims.

---

[7] Defendants have also filed a Motion to Dismiss the statutory bad faith claim arguing that Plaintiff's claim does not fall within the purview of these statutes because it is a third-party rather than a first-party claim. (ECF No. 7.) Because, as discussed below, the Court grants summary judgment in favor of Defendants on the statutory bad faith claim, it need not address the arguments raised in the Motion to Dismiss.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Motion for Summary Judgment (ECF No. 22) is GRANTED;

2. Plaintiff's Motion for Partial Summary Judgment (ECF No. 42) is DENIED;

3. Defendants' Motion to Dismiss (ECF No. 7) is DENIED as MOOT;

4. The Clerk shall enter Judgment in favor of Defendants on all counts; and

5. Costs shall be taxed against Plaintiff.

Dated this 30th day of January, 2012.

BY THE COURT:

William J. Martinez
United States District Judge